In the Matter of a Member of the Bar of the Supreme Court of the State of Delaware, Arlen MEKLER, Respondent.

Nos. 403, 1995, 27, 1996.

Supreme Court of Delaware.

Submitted: July 22, 1996.
Decided: Sept. 18, 1996.
Rehearing Denied: Oct. 8, 1996.
Revised: Oct. 15, 1996.

David Curtis Glebe, Chief Counsel (argued), Office of Disciplinary Counsel, Wilmington.

Victor F. Battaglia (argued), and Charles Slanina (argued), Biggs & Battaglia, Wilmington, for Respondent.

Before VEASEY, C.J., HARTNETT and BERGER, JJ.

PER CURIAM.

**I.**

This is a review of two reports issued by The Board on Professional Responsibility ("the Board") in which the Board found that

Respondent, Arlen Mekler ("Mekler"), violated several of the Delaware Lawyers' Rules of Professional Conduct ("Professional Conduct Rules") and recommended that he be sanctioned by a public reprimand.

Until recently suspended, Mekler was a member of the Bar of this Court, having been admitted in 1972.[1] The first of the two reports, Board Case No. 47, 1994, was issued on November 8, 1995, and addressed Mekler's failure to pay state and federal income taxes. The second report, Board Case No. 60, 1994, issued on February 5, 1996, dealt with a complaint filed against Mekler by a former client alleging that Mekler had represented the client's wife in a matter substantially related to and adverse to his representation of the former client.[2]

Mekler objects to several conclusions of law made by the Board in the two reports. The Office of Disciplinary Counsel ("Disciplinary Counsel") objects to one of the Board's legal conclusions. Mekler asserts that the Board incorrectly interpreted the breadth of two of the Professional Conduct Rules which it deemed had been violated. According to Mekler, the Board erred in Board Case No. 47, 1994 by concluding that his failure to pay federal and state income taxes was willful. He also argues that, in Case No. 60, 1994, the Board erred when it held that it was a violation of the rules for Mekler to have represented the father of a child in a custody dispute in 1984 and then represent the mother in a custody matter involving the same child in 1994. Disciplinary Counsel argues that the Board erroneously failed to find that Mekler's actions in Board Case No. 60, 1994, involving the adverse client representation, were prejudicial to the administration of justice.

We review these respective contentions pursuant to Rule 9(e) of the Rules of the Board on Professional Responsibility. We find that the Board properly applied the Professional Conduct Rules in finding that Mekler had violated several of its provisions.

1. *Matter of Mekler*, Del.Supr., 669 A.2d 655 (1995).

2. Pursuant to an Order of this Court, the February 5, 1996 report supplemented factual findings and conclusions of law made by the Board in a report on Board Case No. 60, 1994 issued on October 11, 1995. For purposes of this review, conclusions from both of those reports are examined.

Accordingly, those rulings are AFFIRMED. We do not perceive any error in the Board's refusal to find the additional violation of the Professional Conduct Rules urged by Disciplinary Counsel. That ruling of the Board is therefore also AFFIRMED.

■ As to the sanctions to be imposed for the violations found by the Board and sustained herein, this Court exercises its own judgment and is not bound by or limited to the Board's recommendations. Based on the record before us, the Court concludes that a six-month suspension is warranted in lieu of the public reprimand suggested by the Board.

## II.

■ The Board's conclusions of law are subject to *de novo* review. *In re Figliola*, Del.Supr., 652 A.2d 1071, 1074 (1995). In addition to its legal conclusions, the Board made substantial factual findings in both of the reports. The findings are not disputed and are summarized below as pertinent to our review of the issues of law.

### Board Case No. 47, 1994

This matter arose from a routine compliance check of Mekler's books and records performed in August of 1994. Based on the results of that examination, Disciplinary Counsel initiated charges against Mekler, alleging, among other things, that he had failed to reconcile his client accounts and had failed to pay state and federal income taxes.

It is undisputed that from 1988 through 1992 Mekler did not pay the state or federal income taxes he owed. Mekler, however, timely filed all his tax returns for these years. These returns reflected an aggregate tax liability of approximately $90,000 in federal income taxes and $17,000 in state income taxes. During these years he paid only $2,000 to the United States and nothing to the State of Delaware. Mekler had reached an agreement with the Internal Revenue Service to pay $500 per month toward his back taxes, but his performance under this arrangement lasted only a few months.

■ The Board found that Mekler's failure to pay his taxes violated Professional Conduct Rule 8.4(d), which provides that it is professional misconduct for a lawyer "to engage in conduct that is prejudicial to the administration of justice." Mekler objects to this conclusion.

Interpretive Guideline No. 3 to Rule 8.4 provides:

Illegal conduct involving moral turpitude within the meaning of these Rules shall be deemed to include, but not limited to, the following:

(1) Willful failure to make and file federal, state, or city income tax returns or estimated income tax returns, or to pay such estimated taxes, or to supply information in connection therewith at the time or times required by law or regulation;

(2) Willful attempt in any manner to evade any federal, state, or city income tax.

Mekler argues that his failure to pay taxes was not "willful" and, thus, did not violate Rule 8.4(d). He contends that he was unable to pay his tax liabilities because of unanticipated and unusual personal and professional expenses. He claims to have paid $150,000 to $200,000 to satisfy claims which arose because of the acts of other attorneys in his former partnership. He also points to high medical expenses associated with serious illnesses experienced by himself and his family. These financial difficulties ultimately caused Mekler to file for bankruptcy.

This Court has held that the failure to file tax returns violates Rule 8.4. *See, e.g., In re Tos*, Del.Supr., 610 A.2d 1370 (1992) (willful failure to timely file a federal income tax return for one year and State income tax returns for two years resulted in a three-year suspension); *In re Sandbach*, Del.Supr., 546 A.2d 345 (1988) (willful failure to file tax returns for five years resulted in a three-year suspension); *In re Sanders*, Del.Supr., 498 A.2d 148 (1985) (willful failure to file tax returns for three years resulted in three year suspension). Mekler's failure to pay income taxes is different, however, than the conduct at issue in *Tos, Sandbach*, and *Sanders*, where no tax returns were filed. Mekler filed all his returns when due and reached an arrangement for payment with the Federal Internal Revenue Service.

Although Mekler timely filed his income tax returns, his extended failure to pay the taxes due still violates Rule 8.4. While we are sympathetic to the unusual financial difficulties experienced by Mekler, the duration of his failure to pay taxes distinguishes this matter from a situation where unexpected events might justify a temporary delay in payment or where taxes are paid in accordance with a payment schedule agreed to by the taxing authorities. Mekler failed to pay his tax liabilities for **four consecutive years.** And while he did enter into an arrangement to pay his back federal taxes, that arrangement was short lived and no arrangement was ever made with the State of Delaware.

 Interpretive Guideline No. 3 provides that willful failure to pay taxes constitutes a violation of Rule 8.4. Although we acknowledge that not every delay in paying taxes constitutes a willful failure to pay taxes in violation of Rule 8.4, a lawyer must make good faith attempts to meet tax obligations. Based on the almost total lack of significant payment of the federal taxes due and no payment of the state taxes due for over four years, we find no error in the Board's conclusion that Mekler's failure to pay his state and federal income taxes was willful.

The Board also found, and Mekler concedes, that he violated Professional Conduct Rule 1.15(a) by maintaining $33,000 of his own funds in an escrow account. The Board "view[ed] this violation to be of a less serious nature than the usual violation of this Rule since the funds were marked as belonging to the IRS, were in fact so used in 1994, and no harm is alleged to have occurred to anyone as a result thereof."

### Board Case No. 60, 1994

On September 14, 1984, Mekler represented George Smith[3] in a child custody matter in the Family Court for New Castle County against Smith's former wife. Mekler represented Mr. Smith at a hearing that addressed an emergency petition filed by Mr. Smith's then wife requesting custody of the two minor children of the marriage. One of the children involved in the custody suit was Douglas who was then eight years old. Mek-

---

**3.** The names used are pseudonyms.

ler had no contact with either Mr. or Ms. Smith after February of 1986, when Mr. Smith retained another attorney.

On September 21, 1994, when Douglas was seventeen, his mother, then bearing a different last name because she had remarried, petitioned the Family Court seeking his custody after Douglas had run away from his father's home. An emergency hearing was scheduled.

During the afternoon before this emergency hearing, the mother came to Mekler for representation. Although Mekler did not recognize her from the 1984 hearing, he did receive a copy of the petition which named George Smith as the respondent. Mekler did not recognize the name nor did he check his files to see if he had represented Mr. Smith in the past. Mekler still had Mr. Smith's old file, however, and had he checked, he would likely have learned of the prior representation.

At the emergency hearing before Judge Keil, Mr. Smith recognized Mekler and, once the hearing started, he realized that Mekler was representing his ex-wife. Mr. Smith, however, did not call this to the attention of his attorney, Mekler, or the judge. At the conclusion of the hearing, Judge Keil awarded temporary custody of Douglas to Delaware Family Services, but he directed the attorneys to confer and determine whether a full hearing would be appropriate in light of the fact that Douglas would be eighteen years old in four months.

A few days after the hearing, when Mr. Smith discussed Mekler's representation of his ex-wife with his attorney, he was advised that it was improper for Mekler to represent the ex-wife in the absence of Mr. Smith's consent. His attorney then wrote to Mekler stating:

"I have reviewed Judge Keil's civil disposition of October 21, 1994. I am requesting that you immediately withdraw as counsel from this matter. You represented George Smith against [his former wife] in 1984 until 1986 when I entered my appearance on Mr. Smith's behalf."

In response to this letter, Mekler filed a motion to withdraw from the case, stating that this was the first time that he had been made aware of his prior representation of Mr. Smith and concluding that "clearly under the circumstances, my withdrawal at this time is appropriate."

Following Mekler's withdrawal, George Smith filed a complaint with Disciplinary Counsel which led to the filing of the petition which charged Mekler with violating Professional Conduct Rules 1.9(a), 1.1, and 8.4(d).

■ Professional Conduct Rule 1.9(a) provides: "A lawyer who has formerly represented a client in a matter shall not thereafter: (a) Represent another person in the same or a substantially related matter in which that person's interest are materially adverse to the interests of the former client unless the former client consents after consultation...."

It is undisputed that Mekler never asked for Mr. Smith's consent to represent Smith's ex-wife at the hearing nor did he recognize that a potential conflict existed when he agreed to represent the former wife. It is further evident that once Mekler was reminded of his previous representation of Mr. Smith, he promptly withdrew from representing the former wife.

Mekler argues to this Court that his representation of the former wife was not "substantially related" to his prior representation of Mr. Smith and, therefore, no violation of Rule 1.9(a) occurred. We disagree. Both actions were disputed between the same two parties and involved the custody of the same child. Further, both actions took place in the Family Court of New Castle County and both were docketed under the same file number. We find that the record fully supports the Board's conclusion that Mekler violated Rule 1.9(a).

■ The Board also found that Mekler had violated Professional Conduct Rule 1.1, which requires lawyers to provide competent representation to their clients. We agree with the Board's conclusion that Mekler violated this rule by failing to check his files to see if he had represented George Smith in the past. Avoiding conflicts of interest is intrinsic to providing competent representation. "A lawyer's duty of care includes the duty to avoid conflicts of interest that may impair or constrict the lawyer's ability to exercise independent professional judgment on behalf of his client." Geoffrey C. Hazard, Jr. and W. William Hodes, *The Law of Lawyering* § 1.1:201–2 (Prentice–Hall 1993) (commenting on ABA model Rule 1.1 upon which Delaware Lawyers Rule of Professional Conduct Rule 1.1 is patterned).

■ The Board rejected the argument put forth by Disciplinary Counsel that Mekler's handling of this situation was prejudicial to the administration of justice in violation of Professional Conduct Rule 8.4(d). It concluded that Mekler's deficiencies in this particular case were not detrimental to the administration of justice. Disciplinary Counsel objects to this conclusion.

According to Disciplinary Counsel, by entering his appearance to represent the former wife, Mekler implicitly represented to the Family Court that he had the right to represent this client and that he was properly before the court. Disciplinary Counsel argues that Mekler's subsequent withdrawal from the case, which occurred because of his failure to determine from his files whether he had ever represented Mr. Smith, disrupted the legal process.

The Board's conclusion that Mekler's handling of this matter did not violate Rule 8.4(d) is sound. As the Board pointed out, "under the specific facts of this case, no disruption [to the legal process] occurred since the Court was not required to hold any further hearings." Not long after Mekler entered his initial appearance, the child who was at the center of the dispute turned eighteen and was no longer subject to the jurisdiction of the Family Court. There is nothing in the record to suggest that Mekler's participation in, and subsequent withdrawal from, this case hindered the legal process. We therefore agree with the Board's conclusion.

### III.

We now turn to the task of determining the proper sanction for Mekler's conduct.

"This Court has exclusive authority and wide latitude in determining disciplinary sanctions over lawyers." *In re Figliola,* Del.Supr., 652 A.2d 1071, 1076 (1995) (citing *In re Agostini,* Del.Supr., 632 A.2d 80, 81 (1993)). "The primary purpose of disciplinary proceedings is 'to protect the public; to foster public confidence in the Bar; to preserve the integrity of the profession; and to deter other lawyers from similar misconduct.'" *Id.* (quoting *Agostini,* 632 A.2d at 81). We focus on four factors when imposing a disciplinary sanction: "(i) the nature of the duty violated; (ii) the lawyer's mental state; (iii) the actual or potential injury caused by the misconduct; and (iv) the existence of aggravating and mitigating circumstances." *Id.*

■ We find that the violations of Professional Conduct Rule 1.15(a) in Case No. 47, 1994 and the violations of Rules 1.9(a) and 1.1 in Case No. 60, 1994, are appropriately redressed by a public reprimand. While far from trivial, these violation were inadvertent, technical in nature, and did not result in any client harm or harm to the public.

■ Fashioning an appropriate sanction for Mekler's failure to pay income taxes, however, is much more difficult. We appreciate the distinction between Mekler's nonpayment of taxes and cases where no tax returns were filed. In *In re Tos,* 610 A.2d at 1374; *In re Sandbach,* 546 A.2d 345 at 347, and *In re Sanders,* 498 A.2d 148, the lawyers were each suspended from the practice of law for three years for failing to pay taxes *and* failing to file tax returns. Because Mekler timely filed his state and federal tax returns, a suspension of that length is not appropriate. Unlike the Board, however, we find that the violation of Rule 8.4(d) which resulted from Mekler's willful failure to pay income taxes is such a serious offense that it requires a more severe sanction than a public reprimand.

Before recommending a public reprimand as the appropriate sanction for Mekler's violation of Rule 8.4(d), the Board considered several aggravating and mitigating circumstances. The mitigating factors consisted of Mekler's long history of service to the Bar and community, his cooperation with Disciplinary Counsel, and his severe unanticipated financial and personal problems. The countervailing aggravating factors listed by the Board were Mekler's prior disciplinary record, his long and substantial experience as a practicing attorney, and his inability to acknowledge or admit the wrongful nature of his conduct. The Board found that the totality of these factors neither weighed in favor of or against Mekler.

Mekler's failure to pay federal and state taxes for four years is a serious violation of the Professional Conduct Rules and manifests a contempt for them. Unfortunately, Mekler's prior disciplinary record shows a similar contempt for the Rules. This Court chronicled Mekler's long history of disciplinary sanctions in *In re Mekler,* Del.Supr., 669 A.2d 655, 669 (1995). While we have taken into account Mekler's many positive contributions to the Bar and the community, *see id.* at 670, and his severe financial problems, in light of his willful failure to pay taxes and his past misconduct, we are compelled to impose a more serious sanction than the one recommended by the Board.

Often taxpayers are faced with financial problems. This does not exempt them from making a good-faith effort to fulfill their tax obligations. To require less of the members of our profession would not be in the best tradition of this Bar. *See Bennethum v. Superior Court,* Del.Supr., 52 Del. 92, 153 A.2d 200, 203 (1959) ("The failure, or refusal, by a member of the bar to perform [his duties as a citizen] may well be such a breach of professional ethics as to require disciplinary action by this Court...."). We therefore conclude, after considering all the facts and circumstances, that for the willful nonpayment of state and federal income taxes in violation of Rule 8.4(d), Mekler must be suspended from the practice of law for a period of six months in addition to the suspension he is already serving.

Accordingly, IT IS ADJUDGED and ORDERED that Mekler be disciplined as follows:

(1) Arlen Mekler shall be prohibited and suspended from engaging in the practice of law for a period of not less than six months, beginning at the conclusion of the one year

suspension he is currently serving pursuant to this Court's decision in *In re Mekler,* Del.Supr., 669 A.2d 655 (1995).

(2) During the suspension, Mekler shall conduct no act directly or indirectly constituting the practice of law (including the sharing or receipt of any legal fees).

(3) Mekler shall comply with the provision of Rule 24 of the Rules of the Board on Professional Responsibility.

(4) Mekler shall continue his existing arrangement with another member or members of the Delaware Bar to protect the interests of any of his clients during the period of suspension, and shall submit to this Court on or before January 1, 1997, a certificate of compliance with this paragraph, co-signed by the attorney or attorneys who have undertaken such assignment.

(5) As a condition of reinstatement, Mekler shall pay the costs of the Office of Disciplinary Counsel for this disciplinary proceeding, as well as any other costs incurred in seeking reinstatement.

(6) This Opinion shall be disseminated by Disciplinary Counsel in accordance with Rule 3 and Rule 14 of the Rules of the Board on Professional Responsibility.