**In the Matter of Clyde M. ENGLAND, Jr., a Member of the Bar of the Supreme Court of the State of Delaware.**

Supreme Court of Delaware.

Submitted Feb. 14, 1980.

Decided July 16, 1980.

Disciplinary proceedings upon Final Report of the Censor Committee of the Supreme Court.

1. The Order of this Court of November 18, 1975, was as follows:

"IT APPEARING that the Respondent is a member of the Bar of this Court and has been actively engaged in the private practice of law, and

"IT APPEARING that numerous legal matters have been entrusted by clients to the Respondent which require immediate and careful attention for the protection of such clients' rights and interests, including the administration of various estates for which the Respondent is responsible as a fiduciary or as attorney for the fiduciary, and

"IT APPEARING that the said Clyde M. England, Jr. left the State of Delaware on or about October 16, 1975, and has not returned, and

"IT APPEARING that the Court of Chancery of the State of Delaware, as evidenced by its Order dated October 31, 1975, in Civil Action No. 4921, found it necessary to appoint and did appoint a Temporary Receiver for the Respon-

Charles S. Crompton, Jr. (argued), Wilmington, for the Censor Committee.

Victor F. Battaglia (argued), of Biggs & Battaglia, Wilmington, for the respondent, Clyde M. England, Jr.

Before HERRMANN, C. J., DUFFY and McNEILLY, JJ.

PER CURIAM:

The Censor Committee, of this Court, has recommended that disciplinary action be taken against the Respondent, Clyde M. England, Jr., a member of the Delaware Bar.

I.

The recommendation is based upon its Final Report containing the following findings of fact and conclusions of law:

FINDINGS OF FACT

"1. On October 29, 1975, a Petition for Temporary Suspension was filed in this Court seeking to suspend Respondent from the practice of law under Then–Rule 33(2). On November 18, 1975, an Order was entered pursuant to that Petition suspending Respondent from the practice of law.[1] That Order of suspension remains in effect.

dent to carry out the obligations of the Respondent to his clients and to protect and preserve their interests, and

"IT FURTHER APPEARING that by reason of the foregoing there is a substantial probability that Respondent has violated Disciplinary Rule 6–101 of the Code of Professional Responsibility in that he has neglected or is neglecting legal matters entrusted to him and that the same might cause irreparable injury to Respondent's clients and to the orderly administration of justice, all as provided in Rule 32(4) of the Rules of this Court,

"NOW, THEREFORE, it is

"ORDERED, that the Respondent, Clyde M. England, Jr., shall be and he hereby is temporarily suspended from the practice of law in the State of Delaware as a member of the Bar of this Court pursuant to the following terms and conditions.

"1. The suspension shall continue pending the determination and report by the Censor

"2. On or about August 3, 1979, an Order to Show Cause was issued by the Censor Committee and served upon Respondent by certified mail, return receipt requested. Thereafter, upon the request of counsel for Respondent, the proceedings under the Rule to Show Cause were stayed pending the outcome of certain criminal proceedings relating to the same transactions. On October 29, 1979, an Amended Rule to Show Cause was issued by the Committee and served upon Respondent's counsel.

"3. A hearing before the Committee was scheduled for November 28, 1979. Prior thereto the following facts were stipulated to by an agreement executed on behalf of Respondent by his counsel and on behalf of the Committee by Charles S. Crompton, Jr.:

"A. On September 18, 1974, Respondent was appointed Executor of the Estate of Alexis H. LeMoigne by the Register of Wills for New Castle County. The petition for letters testamentary recited that the decedent possessed personal property with a value of approximately Twenty Thousand ($20,000.00) Dollars and real property with a value of approximately Forty Thousand ($40,000.00) Dollars.

"B. As Executor of the Estate of Alexis H. LeMoigne, Respondent collected certain assets of the decedent. Among these assets were those deposited to an Executor's checking account at Wilmington Trust Company, account number 2192–3516, upon which Respondent alone was authorized to draw checks.

"C. Respondent intentionally and fraudulently took from this estate account, or from other sources of funds belonging to the estate, certain funds, at least to the amount of Fifty Thousand ($50,000.00) Dollars, and illegally converted them to his personal use and benefit.

"D. In connection with the transactions described above, Respondent has entered a plea of guilty in the Superior Court of the State of Delaware to a criminal charge of theft, in violation of 11 *Del.Code* § 841(f) and is presently awaiting sentencing upon this felony.

"4. At the hearing before the Committee on November 28, 1979, the Amended Rule to Show Cause and the Stipulation of Facts were admitted into evidence as Committee Exhibits 1 and 2, respectively, and no further evidence was offered by Respondent or the Committee."

## CONCLUSIONS OF LAW

"Based upon the foregoing, the Committee concludes:

"1. Respondent has violated DR 1–102(A)(3)[2] in that he has engaged in illegal conduct involving moral turpitude.

"2. Respondent has violated DR 1–102(A)(4)[2] in that he has engaged in con-

Committee to this Court upon the matters presently pending before that Committee involving the Respondent herein, or until further order of this Court.
"2. During the term of this suspension, the Respondent shall not (a) engage in the practice of law in the State of Delaware; (b) receive or share in any legal fees arising out of his own prior services or the services of any other person (except as provided hereafter in paragraph 3); or (c) hold himself out to the public as an attorney or maintain or display any public sign or listing at his office or otherwise of his membership in the bar.
"3. Notwithstanding the foregoing, nothing in this Order shall be construed to limit or in any way restrict the powers, duties, rights or obligation of the Temporary Receiver appointed by the Court of Chancery for the estate, affairs and assets of the Respondent, and specifically, without limitation, shall not restrict or limit the Receiver's right to receive and collect fees for professional services heretofore rendered by the Respondent or at any time by the Receiver."

**2.** DR 1–102(A)(3) and (4) provide:
"DR 1–102. Misconduct.
"(A) A lawyer shall not:
    "(3) Engage in illegal conduct involving moral turpitude.
    "(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

duct involving fraud, deceit or misrepresentation.

"3. Respondent has violated DR 9–102 [3] in that he has failed to preserve the identity of funds and property of a client in identifiable bank accounts maintained in his State."

## II.

The Respondent, represented by counsel, acknowledged notice of the Final Report of the Censor Committee and filed no exceptions thereto. Accordingly, under Rule 64 of this Court, it stands confirmed. The Court heard oral presentations by counsel for the Respondent and the Censor Committee.

## III.

Supplementing the facts set forth above, the record before us discloses the following additional undisputed facts:

The Respondent's whereabouts were unknown to, and unascertainable by, this Court and the Court of Chancery from late 1975 until mid–1979. In 1975, in response to the Censor Committee's Petition to the Court of Chancery for an Operating Receiver (to close the Respondent's law practice), and to this Court for Suspension of the Respondent from the Bar, the Respondent appeared by counsel. Counsel's affidavit stated: that the Respondent had telephoned him on October 29, 1975, informing him that he "was calling from outside the United States."; that the Respondent was informed by counsel in that telephone conversation of the Censor Committee's Petitions for a Receiver and for Suspension. Counsel informed this Court that the Respondent did not disclose his whereabouts, but authorized counsel to accept service on his behalf and to represent him as agent and attorney in the suspension proceedings. The Respondent filed an affidavit in the suspension proceedings, confirming counsel's affidavit and stating: "During my said telephone conversation * * *, I· also informed him that as of that time I did not know whether I would return to the State of Delaware at any time in the future."

The Respondent's whereabouts were unknown to the Censor Committee and this Court until he was accidentally met and recognized by another member of the Delaware Bar in Arlington, Va., where he was engaged in the real estate business.

## IV.

It is the opinion of this Court that only one ultimate conclusion is possible under the facts and circumstances of this case: the Respondent's conduct has been such as to show his moral unfitness to continue in the practice of law.

Accordingly, in the performance of the duty of this Court regarding the governance of its Bar and to protect the public against a lawyer who has shown himself unfit to engage in his profession, we have decided that the extreme discipline of disbarment must be imposed.

* * *

An Order will be entered striking the name of the Respondent Clyde M. England, Jr., from the roll of attorneys of this Court.

---

**3.** DR 9–102 provides in pertinent part:

"DR 9–102. Preserving Identity of Funds and Property of a Client.

"(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office *is situated and no funds belonging to the lawyer or law firm shall be deposited therein * * *.*"